**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**John (Jack) Neithercott,** **Civil No. 01-781 (DSD/SRN)**

**Plaintiff,**

v.

**ORDER**

**Tyco Electronic Corporation, a Pennsylvania Corporation, and Ray Horner, in his individual capacity**

**Defendants.**

---

Steve G. Heikens, Esq., on behalf of Plaintiff.

David J. Duddleston, Esq. and Natalie Wyatt-Brown, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion to Compel Discovery (Doc. No. 11).[1]

This Order addresses that Motion.

## I. DEFENDANTS' MOTION TO COMPEL

### A. Background.

The present motion arises out of a suit in which Plaintiff alleges the termination of his employment violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (2000), the Minnesota Human Rights Act, Minn. Stat. § 363.01 et seq. (2000), and Minnesota

---

[1]The parties agreed to have this motion decided on the papers without oral argument.

FILED APR 0 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

common law. The parties were able to resolve the majority of Defendants' motion. The remaining issue is addressed below.

The Complaint included the following relevant sections:

COUNT THREE
(Age Discrimination Under Minn. Stat. § 363)

106. As a direct and proximate result of the actions of the [sic] Tyco/AMP, Plaintiff has been and continues to be damaged and suffers losses including, but not limited to, humiliation, embarrassment, emotional distress, mental anguish, pain and suffering, and lost income, past and future.

COUNT FOUR
(Aiding and Abetting)

106. As a direct and proximate result of the actions of Defendant Horner's illegal acts, Plaintiff has suffered and continues to be damaged and suffers losses including, but not limited to, emotional distress, mental anguish, pain and suffering, humiliation, impairment of reputation and lost income and benefits, past and future.

COUNT SEVEN
COUNTS AGAINST DEFENDANT Horner
(Intentional Interference with Contract)

121.[sic] Defendant Horner subjected Plaintiff to an abusive and hostile work environment.

122.[sic] Plaintiff's mental anguish and emotional distress was a foreseeable consequence of Defendant Horner's action.

123.[sic] As a direct and proximate result of Defendant Horner's conduct, Plaintiff has suffered lost income, past and future, emotional distress, loss of reputation, embarrassment, ridicule and humiliation.

The following discovery requests and responses have since taken place:

**<u>INTERROGATORY NO. 3</u>:** Identify by name and address each health care provider including without limitation, each psychiatrist, social worker, counselor, physician, clinic, hospital, treatment or rehabilitation facility with whom or with which you have consulted, sought or obtained medical, mental, emotional, or physical examination, care or treatment of any kind since January 1991.

> **ANSWER:** Objection. Plaintiff does not assert a diagnosed physical condition nor any physical injury related to emotional distress with the meaning of Rule 35. No physical condition is placed in controversy within the meaning or Rule 35. He does not allege intentional infliction of emotional distress. He does not intend to offer expert testimony on any medical, psychological or psychiatric injury. He has coped with the humiliation, embarrassment, and emotional distress by self-help and the assistance of trusted friends. His suffering is emotional distress and mental anguish, fully with the province of the jury to assess and will not require outside expert assessment. This answer may be supplemented, if appropriate.

**<u>REQUEST NO. 24</u>:** All documents relating to any claim that you have suffered emotional distress, mental anguish, and pain and suffering as a result of your termination from Tyco or as a result of the other claims set forth in the Complaint, including, but not limited to, any medical reports, prescriptions, diagnoses, prognoses, bills and treatments, and any other documents pertaining to the cause of such emotional distress, mental anguish, and pain and suffering.

> **RESPONSE:** Objection. Plaintiff does not assert a diagnosed physical condition nor any physical injury related to emotional distress with the meaning of Rule 35. No physical condition is placed in controversy within the meaning of Rule 35. He does not allege intentional infliction of emotional distress. He does not intend to offer expert testimony on any medical, psychological or psychiatric injury. This answer may be supplemented, if changed circumstances render it appropriate.

**<u>REQUEST NO. 25</u>:** Executed copies of the attached Release(s) of Medical Records for each health care provider identified in you Answer to Defendants' Interrogatory No. 3.

> **RESPONSE:** Objection. Plaintiff does not assert a diagnosed physical condition nor any physical injury related to emotional distress with the meaning of Rule 35. No physical condition is placed in controversy within the meaning of Rule 35. He does not allege intentional infliction of emotional distress. He does not intend to offer expert testimony on any medical, psychological or psychiatric injury. This answer may be supplemented, if changed circumstances render it appropriate.

**B. Discussion.**

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery of any matter "relevant to the subject matter involved in the pending action" if it would either be admissible as evidence at trial or if it "appears reasonably calculated to lead to the discovery of admissible evidence." The standard of relevance in the context of discovery is broader than in the context of admissibility. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992); Fed. R. Civ. P. 26(b) (inadmissibility is not grounds for objection to discovery). A threshold showing of relevance must be made before discovery is allowed, Onwuka v. Federal Express Corp., 178 F.R.D. 508, 516 (D. Minn. 1997), but the Court has broad discretion in fashioning an appropriate remedy to resolve disagreements over the production of the requested information. Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988). There is no black letter rule on discoverability, rather "courts have undertaken a fact specific determination of the extent of the similarities or dissimilarities, and have inquired about the basis for the discovery request." Hofer, 981 F.2d at 380-81.

> [T]he court in the district where the deposition is to be taken may make any order which justice requires to protect a party of person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) that the disclosure or

discovery may be had only on specified terms.

Fed. R. Civ. P. 26.

The Federal Rules of Evidence provide the following provisions with respect to evidentiary privileges:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. "In general, federal privileges apply to federal law claims, and state privileges apply to claims arising under state law." Pearson v. Miller, 211 F.3d 57, 66 (3rd Cir. 2000).

The Minnesota Rules of Civil Procedure provide the following provision with respect to waiver of the physician-patient privilege:

> If at any stage of an action a party voluntarily places in controversy the physical, mental, or blood condition of that party, a decedent, or a person under that party's control, such party thereby waives any privilege that party may have in that action regarding the testimony of every person who has examined or may thereafter examine that party or the person under that party's control with respect to the same physical, mental, or blood condition.

Minn. R. Civ. P. 35.03.

Defendants assert that Plaintiff should be ordered to provide all of the information sought by Interrogatory No. 3 and Document Request Nos. 24 & 25. Defendants argue that Rule 35 is not at issue, because they are merely seeking discovery of relevant materials, and not requesting

a medical examination. They explain that "where a plaintiff claims a certain type of damage, the defendant should be entitled to examine the claim to determine its strength and the evidence supporting or not supporting the claim." Defendants cite to federal case law holding that if a plaintiff claims entitlement to emotional damages, courts permit discovery of background information relevant to the plaintiff's medical condition. Defendants maintain that they will not be able to adequately defend against Plaintiff's claims of emotional distress without this discovery.

Plaintiff responds that Defendants are not entitled to the discovery they seek. He explains that his federal age discrimination claims do not allow for the recovery of emotional distress. Plaintiff admits that his state law age discrimination claim and intentional interference with contract claim allow for recovery of ordinary emotional distress. But unlike a claim for the intentional infliction of emotional distress, Plaintiff's claims do not require severe emotional distress. Hence, they do not implicate Rule 35. Plaintiff explains that ordinary emotional distress does not constitute a condition, as required by Rule 35. Plaintiff notes that emotional distress is not an element of the claims he has stated. And finally, Plaintiff emphasizes that he will not be offering expert testimony to support a claim of emotional distress. Therefore, his emotional distress is not genuinely in controversy.

As an initial matter, the Court notes the discovery sought is relevant specifically to Plaintiff's state law claims, as there is no mention of emotional distress in any of the ADEA claims. Therefore, the Court must apply Minnesota state law to the privilege issue. See Fed. R. Evid. 501; Pearson, 211 F.3d at 66. Minnesota law provides that a party who puts his or her physical or mental condition in controversy, waives any privilege with respect to medical

records. See Minn. R. Civ. P. 35.03. The question, thus, is what constitutes putting a condition in controversy. Minnesota courts have found that a plaintiff places his medical condition in controversy by contesting his own competency to sign a challenged deed and a power of attorney document. See Younggren v. Younggren, 556 N.W.2d 228, 233 (Minn. Ct. App. 1996). Alternatively, a defendant did not place his medical condition in controversy through his testimony on cross-examination. See e.g. Muller v. Rogers, 534 N.W.2d 724, 726 (Minn. Ct. App. 1995) (finding that testimony elicited on cross-examination is not voluntary and does not constitute a waiver of medical privilege); Briggs v. Chicago, Great W. Ry., 248 Minn. 418, 428, 80 N.W.2d 625, 634 (1957). Unfortunately, there is no state law precedent concerning facts similar to those in the present case. As a result, the Court will look to federal precedent concerning facts similar to the present case for further guidance. The Court does so not to preempt state common law, but in order to give proper effect to Rule 35.03's requirement of placing a medical condition in controversy.

The Eighth Circuit found that a plaintiff's claim of emotional distress waives the psychotherapist-patient privilege even when emotional distress was not an element of the cause of action, and the Plaintiff did not seek to introduce the medical reports as evidence. See Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000). In Schoffstall, the court found a plaintiff had waived her claim of privilege when she brought claims for sex discrimination, retaliation, and sexual harassment, which included allegations of emotional distress. Specifically, the Eighth Circuit upheld the dismissal of these claims, based on the plaintiff's failure to provide complete releases for the medical records sought by the defendants. Id. at 824-25.

The plaintiff in Schoffstall submitted to two fitness-for-duty exams during the period of employment at issue in her suit. Id. at 822. The defendants claimed the restrictions that were placed on the plaintiff as a result of these fitness-for-duty exams were the basis for the decision to remove her from a desired overtime list. Id. The court concluded that the discovery sought was relevant, and that the plaintiff had waived the psychotherapist-patient privilege by putting her medical condition at issue. Id. at 823.

Plaintiff in the present case distinguishes Schoffstall, by emphasizing that the plaintiff in Schoffstall made allegations of extreme emotional distress, rather than general emotional distress. In addition, Plaintiff notes that the Eighth Circuit cites Sarko v. Penn-Del Directory Co., 170 F.R.D. 127, 130 (E.D. Pa. 1997), a case involving claims under the ADA in which proof of depression was an element of disability liability. In the present case, emotional distress is not an element of Plaintiff's claims. Based on these factual differences, Plaintiff concludes that the holding in Schoffstall does not imply that he has put his medical condition at issue in the present suit, nor that he has waived the psychotherapist-patient privilege.

The shortcoming of Plaintiff's argument concerning Schoffstall's citing of Sarko, is that Schoffstall itself did not include ADA claims where emotional distress was an actual element. Further, the cite to Sarko is a string cite that also contains at least one case, E.E.O.C. v. Danka Indus., Inc., 990 F.Supp. 1138, in which the plaintiffs brought Title VII claims and there was no mention that emotional distress was an element of the cause of action. 223 F.3d at 823. The distinction between extreme emotional distress and emotional distress also seems questionable, given it was not an element of the claim.

Aside from the Eighth Circuit, there are a significant number of federal district court

decisions addressing waiver of the psychotherapist-patient privilege. These cases are generally divided into two categories, those taking the "broad view of waiver," and those taking the "narrow view of waiver."

The broad view generally holds that making a claim for emotional damages puts a plaintiff's medical condition at issue, and effectively waives the psychotherapist-patient privilege. The majority of these cases, such as Sarko, involve plaintiffs for whom emotional distress is an element of their claims, or who seek to present evidence of the substance of their conversations with medical providers. A recent broad view case which had neither of those factors is Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131 (E.D. Pa. 2001). In Sanchez, plaintiffs brought Title VII claims for termination of employment, and also alleged significant emotional distress related to the termination. Id. at 133. In addition, in answers to the defendant's interrogatories, they divulged they had received treatment for mental and emotional distress caused by termination of employment. Id. The plaintiffs emphasized that they were making only garden-variety emotional distress claims, and stated they did not intend to call the doctor in question, or any other expert to testify concerning their emotional distress. Id. at 134-35. The court, nevertheless, held they had waived the psychotherapist-patient privilege. It explained that the defendant was entitled to the medical records, which might demonstrate the plaintiffs' claims were either baseless or insubstantial. Id. at 136. The court rejected the plaintiffs' proposal to permit the defendant only to ask whether they had obtained treatment, and what the causes were of any unrelated emotional stress. It stated,

> Though it is true that this approach would protect the sanctity of the records, it would allow the Plaintiffs to proceed with a claim on unequal terms. . . . It would be unfair to allow Plaintiffs to

> unilaterally determine the amount of harm Defendant caused, without allowing the Defendant or the fact-finder to argue, consider and weigh other relevant factors of emotional stress.

Id. at 136. This concern not to allow a plaintiff to determine the scope of discovery, and limit a defendant's ability to argue its actions were not the proximate cause of emotional distress, is repeated in many of the broad view cases. See e.g. Santelli v. Electro-Motive, 188 F.R.D. 306 (N.D. Ill. 1999); Fritsch v. City of Chula Vista, No. CIV.98-0972, 1999 WL 799213.

The narrow view of waiver maintains that the psychotherapist-patient privilege is only waived when the plaintiff introduces the communications themselves as evidence. See e.g. Vanderbilt v. Town of Chilmark, 174 F.R.D. 225 (D. Mass. 1997). In Vanderbilt, the court refused to compel production of psychiatric and psychotherapeutic records from a plaintiff who alleged violations of state and federal discrimination and retaliation law, and sought damages for emotional distress. 174 F.R.D. at 230. The court clarified the scope of the privilege, holding that the substance of the plaintiff's conversations with her psychotherapist were privileged, but "facts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged." Id.

In declining to follow other federal courts' broad view of waiver, the court in Vanderbilt emphasized three points. First, it focused on the Supreme Court's concern in Jaffee v. Redmond, 518 U.S. 1, 17 (1996), that the effectiveness of a psychotherapist-patient privilege would be eviscerated, unless it were made absolute. From this point, the Vanderbilt court reasoned that under Sarko's more general mental-state-at-issue test, "a patient would not know with certainty, at the time of her psychotherapy, whether the communication would be privileged at a later date." 174 F.R.D. at 229. Second, the court analogized seeking damages for emotional

distress to seeking attorneys' fees. Id. It determined that just as seeking attorneys' fees does not waive the attorney-client privilege, seeking damages for emotional distress should not waive the psychotherapist-patient privilege. Id. Finally, the court emphasized that there was no unfairness in maintaining the privilege, as long as the plaintiff was not introducing "evidence regarding the substance of her conversations with her psychotherapist in order to further her claim of emotional damages." Id. at 230. In short, the plaintiff was not using the privilege as both a shield and a sword.

A shortcoming of Vanderbilt, however, is its first point concerning eviscerating the effect of the privilege. While the court in Vanderbilt cites the Supreme Court's language in Jaffee, it is modifying that original argument, and expanding the privilege even further. In Jaffee, the Supreme Court stated,

> We part company with the Court of Appeals on a separate point. We reject the balancing component of the privilege implemented by that court and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.

518 U.S. at 17. The balancing test that the Supreme Court rejected, however, never included the factor of a plaintiff putting his medical condition in controversy. Jaffee involved a deceased plaintiff's estate bringing claims for excessive force against a defendant police officer who had shot him. Specifically, the plaintiff sought access to notes from counseling sessions the defendant had undergone subsequent to the shooting. Id. at 4. The Supreme Court's point concerning eviscerating the privilege seems to be that the defendant has no control over whether the counseling sessions later become relevant to another party. Hence, if that relevance is a

sufficient basis for requiring disclosure, the defendant will have no control over whether the communications are kept private.

When the court in Vanderbilt adopts this language, it is applying it to a different situation, namely one in which the plaintiff's records are sought. The goal of the psychotherapist-patient privilege is clearly to encourage communication that might not take place without guarantees of confidentiality. Hence, any court-determined waiving of such privilege could compromise that goal. But in a case in which a plaintiff waives the privilege by bringing a claim, it was within that plaintiff's power to keep the communications private. It is his choice whether or not to bring the claim at all. Hence, finding he has waived the privilege as a result of bringing his own claim does not eviscerate the effectiveness of the privilege in the same manner cautioned against in Jaffee..

The other difficulty with Vanderbilt, is its analogizing claims for attorneys' fees to general emotional distress claims. The actual content of the conversations between a plaintiff and attorney are not particularly relevant to the issue of the fees themselves. But in a case of emotional distress claims, the content of the conversations with a therapist are certainly relevant to determining the amount of damages.

The Court grants Defendants' motion. Defendants are not requesting a Rule 35 examination, they are seeking responses to relevant discovery requests. A plaintiff can put his or her medical condition into controversy even without claiming intentional infliction of emotional distress, or presenting medical reports in support of the claim. Plaintiff's general claims of emotional distress have made his medical condition relevant, and waived a claim of privilege to much of this information.

The Court recognizes that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidential need for disclosure would eviscerate the effectiveness of the privilege." Jaffee 518 U.S. at 17 n.10. Hence, the sanctity of the privilege is not to be balanced against the importance of the evidence. However, Minn. R. Civ. P. 35.03 and the Supreme Court both recognize that the privilege may be waived. In the present case, Plaintiff has chosen to claim damages for emotional distress. Plaintiff can not now refuse to disclose relevant medical records simply by stating he will not use them to make his own case for damages. Plaintiff may control how he chooses to present his case, but not how Defendants will be permitted to prepare their defense.

Nevertheless, the current discovery requests are unnecessarily broad. As a result, Plaintiff is instructed to produce only the records from treatment with psychiatrists, psychologists, or mental health therapists, rather than all of his medical records. In addition, these records will be limited to the five years preceding the filing of the Complaint. And finally, all of these disclosures will be subject to a confidentiality agreement to be worked out between the parties.

**THEREFORE, IT IS HEREBY ORDERED that:**

Defendants' Motion to Compel Discovery (Doc. No. 11) is **GRANTED in part and DENIED in part** as set forth in this Order..

Dated: April 8, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge